## A. C. BALDWIN V. TRAVIS COUNTY.

Decided June 21, 1905.

**1.—Commissioners' Court—Delinquent Taxes—Publication of Citation.**

Under sec. 15, ch. 103, Laws 25th Leg., p. 103, the Commissioners' Court has no authority to make the county liable by a contract for publishing citation to nonresidents and unknown owners in suits for enforcement of delinquent taxes.

**2.—Same—Statute Construed.**

The provision that a fee may be attached for publishing such citation should be treated as a clerical error and construed as meaning "taxed," and

as contemplating compensation for the publication of notice of suit against nonresident and unknown delinquents by taxing the fee therefor as part of the costs of the proceeding and enforcing it against the property, not against the county.

**3.—Commissioners' Court—Limited Authority.**

Commissioners' Courts have no power to bind the county by contract except so far as the general or special authority to so contract is conferred upon them by the Constitution or by law.

**4.—Unauthorized Contract—Ratification.**

The Commissioners' Court could not make the county liable by ratification of a contract which they had no legal authority to make.

**5.—Implied Contract—Quantum Meruit.**

A county can not be held liable upon implied contract or quantum meruit for an obligation which there was no law authorizing it to incur by contract.

Appeal from the District Court of Travis County. Tried below before G. W. Allen, Esq., Special Judge.

*James & Yeiser* and *John E. Shelton,* for appellant.—Under the Act of the Legislature providing for suits against the unknown owners of real estate in the various counties of the State of Texas upon which taxes are delinquent, the Commissioners' Court of any county has the power to make an express contract with the publisher of a newspaper in its county for the publication of such citations, agreeing to pay him therefor not more than the maximum amount provided for in said Act.

Every county of the State of Texas is a quasi-municipal corporation, and its Commissioners' Court may ratify the unauthorized acts and contracts of its agents or officers, which are within the scope of the powers conferred by law upon said Commissioners' Court, and the ratification may be inferred from acquiescence after knowledge of the material facts or from acts inconsistent with any other supposition.

When a quasi-municipal corporation, such as a county of the State of Texas, has received the benefit of a contract, which it had the power to make through its Commissioners' Court, but which was not legally entered into, it may be compelled to do justice and to pay the consideration or at least to pay for what it received. In such cases it is said the law will imply a contract.

Where the publisher of a newspaper in any county in this State in good faith enters into a contract with such county through its county attorney or assistant county attorney, for the publication of citations against the unknown owners of land, upon which the taxes are delinquent, in said county, believing that said county attorney has been authorized by the Commissioners' Court of such county to make such contract, and thereupon proceeds to publish said citations in accordance with his contract and presents his bill for the publication of a part of said citations under said contract to the Commissioners' Court of said county for payment, and said court, with notice of the fact that said publisher is publishing said citations under a contract made with said county attorney, approves and pays said bill for the publication of a portion of said citations, and relying upon these facts, said publisher continues the pub-

lication of the rest of said citations without any notice from said Commissioners' Court that the county attorney had not been authorized by them to make said contract and that they would attempt to repudiate it, said court is estopped from denying the liability of the county to pay for the publication of the rest of said citations when the bill for same is presented to said court for approval and payment. Looscan v. Harris Co., 58 Texas, 511; Smith v. Wingate, 61 Texas, 54; City of Dallas v. Martyn, 5 Texas Ct. Rep., 297; San Antonio v. French, 80 Texas, 575; Brand v. San Antonio, 37 S. W. Rep., 341; Penn v. City of Laredo, 26 S. W. Rep., 636; Boydston v. Rockwall Co., 86 Texas, 234; Mills Co. v. Lampasas Co., 40 S. W. Rep., 553.

*Brady & Caldwell*, for appellee.—The statute of 1897, authorizing the publication of citations in tax suits against unknown owners of lands, does not contemplate that a county should be in any event liable for publishers' fees. Session Laws of the Twenty-fifth Legislature of Texas, chap. 103, p. 132; City of Bryan v. Page, 51 Texas, 532; Bland v. Orr, 90 Texas, 492; Mills Co. v. Lampasas Co., 90 Texas, 606; Payne v. Washington Co., 25 Fla., 798; Heney v. Pima County (Arizona), 14 Pac. Rep., 299.

Under the Act of 1897, authorizing the publication of citations in tax suits against unknown owners, publisher's fees are costs of suit; and a petition seeking a recovery against a county for such fees is fatally defective upon general demurrer, when neither a taxing nor an adjudication of same as costs is alleged therein.

Where a person without the direction of the proper county authorities voluntarily performs services for the county, he can not recover from the county. Fite v. Black, 92 Ga., 363; Huntington County v. Boyle, 9 Ind., 296; Duval v. Laclede County, 21 Mo., 396; Handlin v. Morgan County, 57 Mo., 114; Ostendorff v. Charleston County, 14 S. C., 403; Epperson v. Shelby County, 7 Lea (Tenn.), 275; City of Bryan v. Page, 51 Texas, 532; Heney v. Pima County (Ariz.), 14 Pac. Rep., 299.

There being a statute providing for and regulating publishers' fees for citations by publication in tax suits, which statute contemplates that a county may be bound for such fees by express contract only (if at all), no contract by implication could arise in any event. Ferrier v. Knox County, 33 S. W. Rep., 896; Wolcott v. Lawrence County, 26 Mo., 272; Lehigh County v. Kleckner, 5 W. & S. (Pa.), 181; Richardson v. Grant County, 27 Fed. Rep., 495; Reichard v. Warren County, 31 Iowa, 381; Hovey v. Wyandotte County, 56 Kan., 577; State v. Getchell, 3 N. D., 243; Payne v. Washington Co., 25 Fla., 798.

EIDSON, ASSOCIATE JUSTICE.—This suit was brought by the appellant against the appellee upon an account alleged to be due him for the publication of a number of citations against the unknown owners of various tracts of land situated in Travis County, Texas, upon which the taxes were delinquent for various years, the total amount alleged to be due for the services of appellant for publishing said citations in his paper, "The Travis County Democrat," being $2,319.37.

The court below sustained the general demurrer of appellee to appellant's petition and dismissed the suit. Appellant's petition, omitting formal parts, is as follows:

"Plaintiff further represents that heretofore, to wit: long prior to the rendition of the services hereinafter set forth, the said County of Travis was desirous of complying with the law and of having its county attorney institute tax suits for the foreclosure of the tax liens existing in favor of the State of Texas and County of Travis upon divers and sundry tracts of land situated in said county and upon which the taxes due to said county and State were owing by persons unknown to the Commissioners' Court and county judge and county attorney of Travis County, and therefore, could not be sued and served with citation in such suits personally so that judgments might be obtained foreclosing the aforesaid tax liens, as well as upon all tracts of land the owners of which were known.

"Plaintiff further alleges that in consideration of the foregoing the Commissioners' Court of Travis County, Texas, entered an order in writing in the minutes of said court authorizing and directing the county attorney of Travis County, Texas, to proceed to institute and prosecute tax suits for the foreclosure of the aforesaid tax liens upon all of the real property in Travis County, Texas, upon which the taxes were then delinquent, a copy of which said order is hereto attached, marked exhibit "A" and made a part of this petition.

"Plaintiff further alleges that a copy of this order was prepared by the county clerk of Travis County, Texas, and was served upon county attorney Henry Faulk, who was at that time the duly elected and qualified county attorney of Travis County, Texas. Plaintiff alleges further that thereafter the aforesaid county attorney proceeded to institute tax suits in accordance with said order against all delinquent tax payers whose names and residences could be ascertained by him, and who could therefore be personally served with citation in said suits, but said county attorney neglected and failed to institute such tax suits against the delinquent real estate of unknown owners whose names could not be ascertained, and who could not therefore be served personally with citation in any suits which he might file against them.

"Plaintiff further alleges that thereafter the Commissioners' Court of Travis County, Texas, on several occasions insisted that the county attorney should proceed with such tax suits and urged him to do so, protesting against his negligence and failure to perform the duties required of him by law, and thereupon, the aforesaid county attorney informed the Commissioners' Court of Travis County, Texas, that it would be necessary to incur on the part of Travis County a considerable expense for the publishing of citations by publication against unknown owners of the lands upon which taxes are delinquent, and that if the said court insisted upon him instituting said suits and was willing to incur said expense, he, the aforesaid county attorney would at once proceed to file said suits and to publish said citations in accordance with the law and prosecute said suits to a final judgment, and thereupon he was directed by the aforesaid Commissioners' Court to proceed with the institution and prosecution of said suits.

"Plaintiff further alleges that thereupon the aforesaid county attorney

at once proceeded to prepare and file his petitions in said tax suits, which are more particularly set forth in the accounts hereinafter described by their numbers on the District Court docket of Travis County, and proceeded to ascertain at what price he could have said citations in said suits published, and after negotiating with several publishers of newspapers in Travis County, Texas, he .directed his assistant J. M. Patterson to let the contract for publishing same to plaintiff at the statutory price of two and one-half cents (2½c.) per line for each insertion of said citations in the "Travis County Democrat," a weekly paper published in Travis County, Texas, by plaintiff; and acting under the said instructions of the county attorney, his assistant J. M. Patterson did thereupon let said contract verbally to plaintiff at the aforesaid price and reported same to the aforesaid county attorney, who thereupon ratified and confirmed his act in letting said contract, as aforesaid.

"Plaintiff further alleges that thereafter the said assistant to the county attorney, J. M. Patterson, appeared before the Commissioners' Court and informed said court that the county attorney was proceeding with the institution of said tax suits against unknown owners, and was proceeding to publish the citations in same as required by law, and that it had come to the notice of the county attorney and himself as his assistant that the descriptions of a number of the tracts of land, upon which the taxes were delinquent, as set forth in the assessment rolls, were insufficient to support a valid judgment of foreclosure, and requested the said Commissioners' Court to instruct him and the county attorney whether or not they should proceed to institute suits and publish the citations in cases where such descriptions were insufficient, and thereupon said Commissioners' Court stated to said J. M. Patterson that the prosecution of such suits, even though the description might be insufficient, would probably have the effect of causing the owners, when they discovered the cloud cast upon their titles by said suits, to pay off any judgment which might be rendered in same, and therefore, the said court directed and instructed said J. M. Patterson to proceed with said suits and the publication of citations therein, regardless of the insufficiency of said description, and the said J. M. Patterson and the said county attorney thereupon proceeded to institute suits upon all of the delinquent tracts, and caused the citations therein to be published, without, however, at any time informing plaintiff that the said descriptions in any of said citations were insufficient, and so far as plaintiff knows and plaintiff here alleges none of said descriptions are insufficient.

"Plaintiff further alleges that thereafter, when he had published citations in sundry and divers suits in the 'Travis County Democrat,' by reason of which Travis County became indebted to him in the sum of ———— dollars for said publication, a list of which said suits by number of the docket as instituted in the District Court of Travis County, Texas, together with the amount due for the publication of same is hereto attached marked Exhibit "B" and made a part of this petition, was in due course of business under the regulations prescribed by law, presented to the Commissioners' Court of Travis County, Texas, as a claim for allowance and payment under his contract, and was ap-

proved by the county attorney and his assistant, and said account was thereupon ordered paid by the Commissioners' Court of Travis County, Texas, and the same was in due course of business paid by proper warrant on the county treasurer of said county, which said warrant was presented to the said county treasurer and was by him received and paid.

"Plaintiff further alleges that after the payment of the aforesaid account, relying upon the facts and conduct of the Commissioners' Court of Travis County, Texas, in the approval and payment of the above said account, without any notice whatsoever from said Commissioners' Court or anyone else that said court claimed or would claim that the said county attorney had not been authorized by them to make the aforesaid contract with plaintiff, under which he was then publishing said citations, said plaintiff proceeded to continue the publication of such citations in the suits which are set out hereinafter in the accounts here sued on, in the said 'Travis County Democrat,' and did publish all of the said citations in full compliance with his contract made and entered into with the county attorney as aforesaid, and during each week of the publication of said citations, the said plaintiff mailed to each of the members of the said Commissioners' Court a copy of said newspaper containing the publication of all of said citations, and plaintiff charges that thereby, as well as by the notice given to said court by the said county attorney and his assistant, J. M. Patterson, each of the members of said court knew, or by the exercise of ordinary diligence could have known that said citations were being published by plaintiff under his contract, and each of the members of said court failed at any time to give plaintiff any notice that said court claimed that the county attorney had no authority to make any contract with plaintiff for the publication of said citations, and failed to inform plaintiff that said court would attempt to repudiate any contract which said county attorney may have made, and failed to notify plaintiff that Travis County would not pay for the publication of same, and thereby, by the payment of said claim and by the silence of said court and the failure of its members to notify plaintiff, the said plaintiff was induced to continue the publication of said citations under and in acordance with his said contract, and said court thereby ratified said contract and are estopped to deny same.

"Plaintiff further alleges that, acting under the aforesaid contract, relying upon the acts and conduct and silence of the said Commissioners' Court ratifying said contract as aforesaid, the said plaintiff has published in full compliance with the law and with his said contract, citations in the 'Travis County Democrat' in all the suits set out in the statements which are hereto attached, which have been presented to the Commissioners' Court of Travis County, Texas, the aforesaid statements showing the number of each case, with the number of lines in the citation therein set out in said statement immediately above the number of cause, and that, under plaintiff's contract for the publication of said citations, plaintiff was to receive the sum of two and a half cents (2½) per line for each insertion or publication of same, and that acting under said contract, plaintiff did publish each of said citations, amounting in the aggregate to thirty thousand and nine hundred and twenty-five

lines, one time for three successive weeks in said "Travis County Democrat,' at the contract rate of two and one-half cents (2½) per line for each publication, making the total contract price due plaintiff for said publication the sum of two thousand three hundred and ninteen dollars and thirty-seven cents ($2,319.37) ; and thereafter, when the publication of said citations had been fully completed under said contract, the said plaintiff presented said accounts in the form of claims to the Commissioners' Court of Travis County for its approval, on January 1, 1903, and after such presentation, on to wit: the 12th day of February, 1903, the said Commissioners' Court, in regular open session, examined said claims and rejected same, all of which will appear from the two said claims, together with their rejections, which are hereto attached marked "Exhibits C and D" and made a part of this petition, and Travis County has refused and still refuses to pay same or any part thereof.

"Wherefore, in consideration of all the foregoing, plaintiff alleges that the county of Travis has become liable to pay plaintiff the sum of money as shown by said accounts, to wit: $2,319.37, the same being payable and due on the 31st day of December, 1902, with interest on the same from said date at the rate of six percent per annum, for which plaintiff prays judgment against said county, as well as for all costs for suit and general relief.

"Plaintiff further alleges that prior to the first day of January, 1903, the said plaintiff acting by and under the direction and instruction of the said county attorney of Travis County, Texas, acting by and through his assistant, J. M. Patterson, did, for the benefit of Travis County, publish citations in suits for taxes due on divers and sundry tracts of land situated in Travis County, in accordance with the law requiring the publication of such citations in all cases where the owners of real estate upon which taxes are delinquent are unknown, the said publication being made in the 'Travis County Democrat,' a weekly paper published by plaintiff in Travis County, Texas, one time for three successive weeks, in full compliance with the law.

"Plaintiff further alleges that the reasonable value of the services rendered by plaintiff in the publication of said citations for three said several weeks as aforesaid in said newspaper by said plaintiff was at the time of said publication, and is now, the sum of two and one-half cents per line for each weekly publication of said citations, being the amount allowed by law, and that the aggregate number of lines of all of said citations published by plaintiff was and is thirty thousand, nine hundred and twenty-five lines, and that the aggregate cost of the three publications was and is seven and a half cents per line, making the total amount due for said three several publications at said rate of two and one-half cents per line the sum of two thousand three hundred and nineteen dollars and thirty-seven cents ($2,319.37), all of which more fully appears from the aforesaid accounts hereinbefore referred to and attached to this petition as exhibits and made a part thereof.

"Wherefore, plaintiff says that by reason of his having performed the services hereinbefore set out at the instance and request of the county attorney of Travis County, Texas, for the benefit of Travis County, in accordance with the law, the said defendant Travis County has become

liable to pay plaintiff the reasonable value of same, to wit, the sum of two thousand three hundred and nineteen dollars and thirty-seven cents ($2,319.37) with interest thereon from the first day of January, 1903, at the rate of six percent per annum.

"Plaintiff further alleges that the foregoing services were rendered by him to Travis County prior to the first day of January, 1903, and that by reason thereof Travis County became liable to pay him the reasonable value of same, to wit: the sum of two thousand three hundred and nineteen dollars and thirty-seven cents ($2,319.37;) and that plaintiff on the first day of January, 1903, presented to the Commissioners' Court of said county his claims for said amount due him as aforesaid, which said claims are attached hereto and have been heretofore referred to, and that thereafter the said Commissioners' Court rejected both of said claims, and has refused and still refuses to pay plaintiff for said services rendered by him as aforesaid, or any part thereof.

"Plaintiff therefore prays that defendant be cited to answer this petition and that upon a final hearing he have judgment for the amount due him hereinbefore set out by Travis County, with interest on same, together with all costs of suit, and for such other relief, both general and special, as plaintiff may show himself entitled to."

Appellant by his assignment of error, and various propositions thereunder, contends that his petition sets up a good cause of action upon an express contract and an implied contract and *quantum meruit*. If the petition alleged a good cause of action upon either an express contract, or an implied contract, or *quantum meruit*, it was error for the court below to sustain the appellee's general demurrer to same, and dismiss the suit.

The first question presented for our consideration and determination is whether the appellee had the power or authority to make the contract set up in appellant's petition. The provision of the statute relied on by appellant as conferring such authority upon appellee is found in the Delinquent Tax Act, chapter 103, of the General Laws of the Twenty-fifth Legislature, page 132, and is section 15 thereof, and reads as follows:

"Sec. 15. Wherever the owner or owners of any lands or lots returned delinquent or reported sold to the State, or that may hereafter be reported sold or returned delinquent for the taxes due thereon for any year or number of years, are nonresidents of the State, or the name of the owner or owners of said land or lots be unknown, then, upon affidavit setting out that the owner or owners are unknown to the attorney for the State, and after enquiry can not be ascertained, said parties shall be cited and made parties by notice in 'the name of the State and county directed to all persons owning or having or claiming any interest in the following described land delinquent to the State of Texas and county of —— for taxes, to wit (here set out description of the land as contained in the assessment roll, and such further description obtainable in the petition) which said land is delinquent for taxes for the following amounts, $—— for State taxes and $—— for county taxes, and you are hereby notified that suit has been brought by the State for the collection of said taxes, and you are commanded to appear and defend such suit at the —— term of the District Court of —— county and State of Texas, and show

cause why judgment shall not be rendered condemning said land (or lot) and ordering sale and foreclosure thereon for said taxes and costs of suit,' which notice shall be signed by the clerk and shall be published in some newspaper published in said county one time a week for three consecutive weeks. If there is no newspaper published in the county, then notice shall be given by publication in a paper in an adjoining county. A maximum fee of 2½ cents per line (seven words to count a line) for each insertion may be attached for publishing the citation as above provided for. If the publication of such citation can not be had for the compensation provided for in this section, then publication of the citation herein provided may be made by posting a copy at three different places in the county, one of which shall be at the courthouse door. . . ."

There is no language in this provision affirmatively requiring or authorizing the county to pay the expense of publishing the citation; and, in our opinion, none which could properly be construed as requiring or authorizing the county to pay same. We are inclined to the view, as suggested by counsel for appellee in their brief, that the word "attached," used in the provision quoted above, is a clerical error, and the word "taxed" was intended to be used. The use of the word "attached" in the connection it is employed in the provision quoted, appears to be improper and inapt, in that it does not appear to definitely express or convey the meaning or idea evidently intended by the Legislature, which was to include the expense of publishing the citation in the costs of the suit. The word "taxed" would definitely and distinctly express and convey this idea and intention, and in our opinion, the word "attached," used in said provision, should be read "taxed;" and in our opinion said provision provides for the payment of the expense of publishing such citations by taxing and collecting the amount as a part of the costs in the suit. Hence, we conclude that this provision of the statute does not authorize the county to pay or make contracts for the payment of the expense of publishing the citations mentioned therein. And we are strengthened in this opinion by the fact that in section 5 of the Act, of which section 15 above quoted is a part, it is expressly provided that the county shall pay for the publication of the delinquent tax record. The fact that the Legislature provided in another section of the same act that the county should pay for the publication of the delinquent tax record, the purpose of which was to give notice to all parties who were delinquent in the payment of their taxes (nonresident and unknown owners included) of such fact, the amount of their taxes, the land upon which same was due, etc., shows that the question of the payment by the county of the expense of publishing notice to delinquent taxpayers was considered, and the fact that after such consideration they provided for payment by the county of the expense of publication of the delinquent tax record, and did not provide for payment by the county of the expense of publication of citation to nonresident and unknown owners of lands upon which the taxes are delinquent, shows that it was not the legislative intention that the county should be liable for such last mentioned expense. County Commissioners' Courts have no power or authority except such as is conferred upon them by the Constitution or statutes of the State. We have been unable to find any constitutional or

statutory provision conferring general or special authority upon Commissioners' Courts to contract for or provide for the payment by the county of expenses of the character sued for in this case. (Bland v. Orr, 90 Texas, 492; Mills County v. Lampasas County, 90 Texas, 606; Bryan v. Page, 51 Texas, 532; Nichols v. the State, 11 Texas Civ. App., 327; Payne v. Washington County, 25 Fla., 798; Heney v. Pima County (Ariz.), 14 Pac. Rep., 299.)

Appellant's contention that appellee is liable on the ground that the Commissioners' Court ratified the contract made by the county attorney and his assistant, is not sound, for the reason that the said court could not bind appellee by the ratification of a contract it was not authorized to make, because not within any power conferred on it by the Constitution or laws of the State. (Boydston v. Rockwell County, 86 Texas, 234; Nichols v. the State, supra; 1 Dillon on Municipal Corporations, sec. 463, and note; 19 Am. and Eng. Ency. Law, 471; 1 Beach on Pub. Cor., sec. 696.) And a county can not be held liable in an action upon an implied contract or *quantum meruit,* unless the Commissioners' Court was authorized to make the contract sought to be implied, or on which the *quantum meruit* is based. (City of San Antonio v. French, 80 Texas, 578; Penn v. City of Laredo, 26 S. W. Rep., 636; Peck v. City of Hempstead, 65 S. W. Rep., 653; 1 Dillon on Municipal Corporations, secs. 459, 460.) There being no liability upon a contract not within the scope of the authority of the Commissioners' Court, the county can not be estopped from setting up the question of authority to make such contract as a defense to an action upon same. (2 Dillon on Municipal Corporations, 935-6.)

We are of opinion that the court below did not err in sustaining appellee's demurrer to appellant's petition and dismissing his suit, and the judgment of the court below is therefore affirmed.

*Affirmed.*

Writ of error refused.