## ADAMS v. STEPHENS COUNTY.
### No. 826.

Court of Civil Appeals of Texas. Eastland.
July 10, 1931.

Rehearing Denied Sept. 18, 1931.

T. B. Ridgell, of Breckenridge, and Luther Nickels, of Dallas, for appellant.

S. J. Osborne and Robert E. Bowers, both of Breckenridge, for appellee.

Ritchie & Ritchie, of Mineral Wells, for Strawn Nat. Bank.

LESLIE, J.

In this case George T. Adams sued Stephens county, alleging that he, as the duly elected tax collector of Stephens county for the years 1921, 1922, 1923, and 1924, collected state and county taxes and by mistake paid to the county $3,389.46 by way of excess fees more than he was due to pay the county for the year of 1921, and that such payment included the sum of $488.50 of his commissions earned in the collection of delinquent taxes, and that by virtue of like mistake he paid into the county for the year of 1922 his commissions for the collection of delinquent taxes amounting to $1,175, all of which it is alleged Stephens County refused to return to him.

Stephens county entered general and special denials, and presented a cross-action against Adams; seeking to cancel a certain warrant in the sum of $5,900.03 issued to him pursuant to an order of the commissioners' court made December 31, 1929, and purporting to be in full settlement with Adams for all claims made by him against the county as arising during his tenure of office. This warrant had been duly registered and for a valuable consideration transferred to the Strawn National Bank, who owned it at the time the suit was filed. For that reason the county in its cross-action made said bank a party to the suit, and also sought cancellation of the order authorizing the warrant against it.

The county attacked the validity of the order and the warrant on the grounds: (1) That Stephens county did not owe Adams anything at the time of the entry of the order and the issuance of the warrant; (2) that no provision was made for the payment of the warrant at the time of its ordering; (3) that the claim by Adams was made and acted upon by the county at a time when both parties knew that the county owed Adams nothing. In other words, it was the county's view that the order and the warrant were, under the circumstances, void.

Adams and the Strawn National Bank allege that the order of the commissioners' court directing the issuance of the warrant was res adjudicata of the matters of the existence of the indebtedness to Adams and the amount thereof, and that the county's efforts to cancel the warrant and order amounted to a forbidden collateral attack upon the same.

The trial was before the court without a jury, and resulted in a judgment denying Adams any recovery, but canceling the warrant and allowing the bank recovery over against Adams for the sum of $5,944, the principal amount paid by the bank for the warrant and the interest thereon. Adams and the bank each duly excepted and gave notice of appeal, but Adams alone has perfected the appeal, and the bank accepts the judgment.

The appellant's major assignments and

propositions attack the judgment as being erroneous on the ground that the county's cross-action seeking to cancel the warrant was an unauthorized collateral attack on the order or judgment of the commissioners' court approving the claim and ordering the warrant.

These contentions will be examined in the light of the record, and the facts given a little more extensively.

By plaintiff's pleadings and proof it conclusively appears that the subject-matter of the suit, the objects of recovery (the $3,389.46 excess fees and the items of $488.50 and $1,175, alleged to be fees for the collection of delinquent taxes during 1921 and 1922, respectively) passed into and became part of the claims which Adams contends he presented to the commissioners' court, that were considered by it, and which it undertook to adjust and settle by the issuance of the warrant for $5,900.03, pursuant to the court's order to that effect. In support of this conclusion we give the following excerpt from the plaintiff's pleadings, a part of which we italicize:

*"This plaintiff insists that the item of $488.50, commissions on collection of delinquent taxes for the year 1921, and also the sum of $1175.00, commissions on delinquent taxes for the year 1922, were both included and considered in a certain voucher for $5900.03, which voucher was dated about Dec. 31st, 1929, and was payable to this plaintiff (Adams) but is now owned by the co-defendant, the Strawn National Bank, who is seeking judgment for said $5900.03 voucher aforesaid.* But, if mistaken, that said two items are not included in said voucher aforesaid, and which plaintiff first insists was done, but in the alternative should his only reason be found and held that said commissions on delinquent taxes are not included in the voucher, and if for any reason the same should not be established as a part of said voucher and judgment thereon rendered, then in the alternative only plaintiff insists that he have judgment in this suit for said two items—one for $488.50 which would, therefore, in that event, be included in the claim of $3389.46; and in addition judgment for $1175.00, being the commission aforesaid for the year 1922.

"This last above prayer for judgment for said commission for said two years is strictly an alternative prayer and relief, *the plaintiff insisting that the said two items were included and adjudicated and are part of the said $5900.03, and that the Strawn National Bank is entitled to recover that sum by reason of its ownership of voucher and the additional sums represented by said voucher."*

The plaintiff then follows this with a concluding prayer for judgment for the $3,389.46 with interest, etc., and again in the alternative for the $488.50 and $1,175 with interest; said items alleged to be commissions on delinquent taxes for 1921 and 1922, respectively.

It will also be observed that Adams' testimony supports his first and primary plea, as above indicated.

About November 25, 1929, the plaintiff Adams presented to the county auditor and the commissioners' court of Stephens county a claim against the county for excess fees amounting to $5,900.03. The claim was presented in writing and as follows: "Stephens County, debtor, to Geo. T. Adams in the sum of $5900.03 for excess payments to the County Treasurer for said county for the years 1923 and 1924, said payments being erroneously made through mistake under the belief that all county officers of Stephens County were under the Fee system, when in fact they were not under said system. G. T. Adams, Ex-Tax Collector of Stephens County, Texas."

Thereafter on the 31st day of December, 1929, said court entered an order allowing the claim, directed the issuance and delivery of a warrant to Adams, payable from the general revenues the following April 1, 1930. It was of the tenor following:

"No. 1919       $5900.03

"State of Texas

"Do Not Cash This Warrant

"The Treasurer of the County of Stephens

"Min. Book 8, page 205. Check will be issued by County Treasurer at maturity of warrant. To be paid April 30th, 1930, at the office of the County Treasurer.

"Pay to Geo. T. Adams or { bearer the sum / order

of Five Thousand Nine Hundred and 03/100 Dollars Out of the General Fund, being the amount allowed by the Commissioners' Court of said County at its December Term, 1929.

"For full and final settlement of all excess fees of office paid to Stephens County during Mr. Adams' tenure of office as Tax Collector.

"Witness my hand and seal of said court at Breckenridge, Texas, this 31 day of December, 1929.     B. R. Grant, County Clerk.

"Approved: E. R. Maxwell, County Auditor."

The plaintiff, Adams, indorsed thereon the following:

"I accept this warrant in full payment of all claims against Stephens County for the years 1923 and 1924 as my claim calls for, which is on file with E. R. Maxwell, the Auditor.       G. T. Adams."

As stated, he thereafter transferred and indorsed it to said bank, and the commissioners' court, at its next regular meeting, countermanded the original order, and directed the cancellation of the warrant.

From the testimony it conclusively appears that the excess fees for 1921, amounting to $3,389.43, and those for 1922, amounting to $5,900.03, were paid into the county treasury of Stephens county. The law as it then exist-

ed required such payment. Section 4, Ch. 158, p. 301, Acts of 1919; Stephens County v. Hefner, 118 Tex. 397, 16 S.W.(2d) 804.

During such years the tax collector and other officers of Stephens county, which had a population of less than 25,000 inhabitants, came under the maximum fee bill, and that condition existed until the Legislature in 1923, chapter 181, p. 397, re-enacted a former statute, thereby exempting from the maximum fee bill the officers in a county so populated, and allowing them to retain such excess fees. Neither of the above sums could possibly form the basis for a warrant, or refund of moneys to Adams.

In 1923 and 1924 Adams paid no amount whatever into Stephens county. He was aware of the law as amended, and availed himself of its provisions by retaining what had formerly been paid in as excess fees.

█ Therefore, giving due effect to Adams' contention that all claims in his favor against Stephens county arising during his tenure of office were considered by the commissioners' court and included in said warrant, and assuming that said claims, without regard to their different natures (inclusive of the $488.50 and $1,175), passed into and were merged in the sum allowed and for which the warrant was issued, as so vigorously contended for by Adams, both in his testimony and his pleadings (as italicized above), it necessarily follows that, having conveyed the warrant to the bank, the only interest which he has in this litigation lies in resisting the county's asserted right to cancel the warrant, which, if decreed, would leave him subject to a judgment in favor of the bank. In this situation the issues simplify themselves. The county, by its cross-action against Adams and the bank, makes a direct attack on the validity of the commissioners' court order approving the claim and authorizing the warrant in satisfaction thereof. Under this character of attack and the conclusive nature of the testimony, the county was clearly entitled to a cancellation of the warrant. The payment to the county of excess fees in 1921 and 1922 was required by law and but the performance of an official duty. Though presenting a claim for such fees for 1923 and 1924, the law did not require Adams to pay such to the county, and in obedience to its provisions he paid none. On cross-examination he admitted as much. Under these views the appellant's propositions noted above are without merit, and the contentions that a forbidden collateral attack was being made upon a final judgment of a court of competent jurisdiction is beside the question, as may be seen from the opinion of our Supreme Court by Chief Justice Phillips in Haverbekken v. Hale, County Judge et al., 109 Tex. 106, 204 S. W. 1162, 1165.

That was a preliminary injunction proceeding, instituted by Haverbekken to restrain the commissioners' court from opening a second-class road across his land. The injunction was upon the ground that the act of the commissioners in ordering the opening of the road was void because, among other reasons, proceedings in respect to the number of freeholders petitioning for the road and the notice given on the petition did not comply with the statutes. A question arose as to the authority of the district court to entertain jurisdiction and supervise the proceedings of the commissioners' court in the matter. In discussing the supervisory powers of the district court over commissioners' courts, and holding the same may be exercised through its equitable jurisdiction, the court said: "The Constitution (Section 8, Article 5), as well as the statute (Article 1706 [now Article 1908, R. S. 1925]), gives the District Court general supervisory control over the Commissioners' Court. That this supervisory control may be exercised through its equitable jurisdiction is well established. Bourgeois v. Mills, 60 Tex. 76; Bounds v. Kirven, 63 Tex. 159; McIntire v. Lucker, 77 Tex. 259, 13 S. W. 1027. The power of the District Court to supervise the proceedings of the Commissioners' Court here involved gave the injunction suit the character of a direct attack upon those proceedings rather than a collateral one. Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325. This permitted a full inquiry for the purpose of seeing whether throughout the proceedings the Court had complied with the law, unhindered by any presumptions ordinarily indulged in a collateral attack upon a judgment of a court of general jurisdiction. Not otherwise could the District Court supervise and control its action."

Article 2351, R. S., 1925, enumerates certain powers and duties of commissioners' courts, among them the third being, "Lay out and establish, change and discontinue public roads and highways." The tenth of such powers is that involved in the instant case, "Audit and settle all accounts against the county and direct their payment."

Under the above opinion the supervisory powers of the district court over the acts of the commissioners' court could not be more certain with reference to roads than to auditing and settling accounts. The authority from which the above excerpt is taken, under the facts of this case, is conclusive as to the right of the county to cancel the order and warrant in question.

█ However, if it be conceded that the attack on the order and warrant is collateral, nevertheless we would be required to hold that they were subject to such an attack on the ground that the commissioners' court had no jurisdiction or authority in law to enter

the order or authorize the warrant. The commissioners' court of Stephens county judicially knew [Cameron County v. Fox, 2 S.W. (2d) 433], and Adams was presumed to know, and did in fact know, as disclosed by the testimony, that the law required him to pay the excess fees for 1921 and 1922 into the county. Said court, under duties imposed by the statute (articles 7260, 7261, 1925), had passed upon the reports of Adams as tax collector for the years 1921 and 1922, and it was a matter of record, knowledge of which was imputable to the court at the time they attempted to allow Adams' claim, that said sum or sums were paid under the requirements of law.

· ■ Nothing having been paid in 1923 and 1924, which Adams admits, there was nothing to act on. There was nothing to act upon in either case, and any attempt to authorize the warrant or the payment thereof, under such circumstances, amounted to nothing less than an attempt to donate or give away that much of the county's public revenues to one who had not the semblance of a legitimate claim thereto. Such would be a diversion of funds, and the law does not permit a diversion of the funds of a county by the commissioners' court from those purposes which the statute declares they shall be applied to, and there was no provision in law whereby the commissioners' court could have transferred to the plaintiff the funds to which he laid claim in this suit. Hence, as in substance held in the Cameron County Case, we here hold that the warrant in question and the order authorizing it were without lawful authority and void.

When the appellant presented his purported claim to the commissioners' court, it was in the same attitude as if it had shown on its face that the excess fees paid into the county treasury for the years 1921 and 1922 were rightfully paid under the law, and could not be refunded to him by the commissioners' court, and that the claim for excess fees alleged to have been paid for 1923 and 1924 were neither in fact paid by Adams nor required to be paid by the law as amended. The record affirmatively showing that the commissioners' court was without jurisdiction, its action in approving the appellant's claim was wholly void, hence subject to collateral attack, and the same is true of the warrant issued pursuant thereto. Other authorities in effect requiring the same conclusions under such facts are: Steusoff v. Liberty County (Tex. Civ. App.) 34 S.W.(2d) 643; School Trustees, Dist. No. 25, Harris County v. Farmer, County Treasurer, et al., 23 Tex. Civ. App. 39, 56 S. W. 555; Slaughter v. Knight (Tex. Civ. App.) 184 S. W. 539; McKinney et al. v. Robinson, 84 Tex. 489, 19 S. W. 699; Baldwin v. Travis County, 40 Tex.

Civ. App. 149, 88 S. W. 480; Austin Bridge Co. v. Road Dist. No. 3 (Tex. Civ. App.) 247 S. W. 674; Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291.

Before passing from this phase of the opinion, attention is called to the fact that the excess fees paid in for 1922 amounted to the exact sum for which the plaintiff made his claim for 1923 and 1924. This circumstance is but a coincidence, and apparently the warrant was not allowed for the excess fees paid in for the year of 1922.

In a manner somewhat confused and difficult to understand, an alternative plea is presented by the plaintiff, and thereby he seems to seek recovery of an item of $488 and another of $1,175, alleged to be commissions earned by him as such official on account of his services rendered in the collection of delinquent taxes of Stephens county. The recovery is claimed only in the event of the cancellation of the warrant (admitted by him to embrace these two items), and only in the event of his inability to collect anything on the theory of excess fees paid by mistake, and also admitted to be included in the warrant.

Passing over the question of whether Adams ever presented a claim for such delinquent tax commissions, it appears that he and the county, by their pleadings and proof, drew a well-defined issue on whether or not he had ever paid any such commissions at all to the county treasurer, either by accident or otherwise. The testimony on this issue was very fully developed. It appears that Adams, in making payments to the county from month to month, regularly deducted 5 per cent. on all delinquent taxes collected and "retained" said commission. His theory, however, is that he later included them, along with the moneys turned in as excess fees. Disregarding the inconsistencies arising out of such claims, and looking to the testimony, we find an abundance of testimony to the effect that, for the years of 1921 and 1922 he retained more delinquent tax commissions than he was apparently entitled to, and he failed to demonstrate by the records or otherwise that the claims he made against the county embraced these commissions, along with excess fees. This he certainly could have done if his records and reports had truly reflected the items paid by him into the county. The trial court resolved the issue against him, and there is an abundance of testimony to support the conclusion in this respect, as well as on all other issues of fact. We would therefore not be warranted in disturbing the judgment on these grounds.

Other propositions and assignments become immaterial.

The judgment is affirmed.