### ALDRICH v. DALLAS COUNTY.
No. 13362.

Court of Civil Appeals of Texas. Dallas.
Dec. 11, 1942.

R. V. Nichols, of Fort Worth, for appellant.

Dean Gauldin, Dist. Atty., and H. Pat Edwards and Warren S. Cook, Asst. Dist. Attys., all of Dallas, for appellee.

LOONEY, Justice.

H. E. Aldrich, doing business as The Tax Record Company, sued Dallas County to recover the reasonable value of services rendered at the request of defendant County, acting through its County Judge and Commissioners' Court, as hereinafter set out in detail. Plaintiff having declined to amend after the court sustained special exceptions to his petition, his suit was dismissed, from which this appeal was prosecuted.

In order to review the action of the court, it will be necessary to examine plaintiff's allegations in detail. There is attached to the petition Exhibit 1, being a book containing approximately 145 pages, sent up with the transcript by order of court, which is repeatedly referred to by plaintiff as to details, all of which reveals that, during the years 1938, '39 and '40, the Commissioners' Court of Dallas County had under consideration an undertaking to revalue the entire taxable property, both real and personal, of Dallas County, and to prepare a complete delinquent tax record to facilitate the rendition of property for taxation, and the collection of both current and delinquent taxes. It seems that the estimated cost of the project was $346,395, of which $267,569 was to be supplied by the U. S. Government through its Works Progress

Administration, and $67,500 by Dallas County. The contract alleged by plaintiff, under which he seeks to recover, was not evidenced by an order of the Commissioners' Court, but, admittedly, was a verbal agreement between him, the County Judge and members of the Commissioners' Court, and there is no allegation that either the contract for services to be performed by plaintiff, or the W.P.A. project undertaken, was ever approved either by the Comptroller or the Attorney General, or that the Auditor of the County certified there existed ample budget provisions for the payment of said items, or that funds were at that time, or would be, on hand to pay the obligations when due.

Plaintiff alleged that he had evolved a tax record system, adapted for installation and use by taxing authorities of various political subdivisions, known as a Standardized Assessment and Delinquent Tax System of rural and urban real property and improvements thereon; that, as a result of the findings made by the Texas state-wide tax survey, completed in 1938, it was discovered that properties located in Dallas County, valued at approximately $50,000,000, were not listed on the tax rolls of the County, thus escaped taxation; that other properties were doubly assessed; many owners of properties were unknown; many properties listed failed to show the improvements thereon; that existing records were duplicated and not permanent, and that proper records were not being kept in regard to delinquent taxes.

He alleged further that the Federal agency known as the Works Progress Administration, created by Congress (referred to herein as W.P.A.), was authorized, upon proper application, to allocate funds to political subdivisions, to be used for making detailed tax surveys for the installation of Standardized Assessment and Delinquent Tax Record Systems; that plaintiff sought to and did interest defendant County, through its County Judge and members of the Commissioners' Court, in sponsoring a tax survey and the installation of plaintiff's Standardized Assessment and Delinquent Tax Record System, under the project proposal, and subject to the requirements and specifications of the W.P.A. He alleged that, as a prerequisite to such financial assistance by W.P.A., the defendant County, as sponsor, was required to submit an application for funds, to which must be attached a complete manual of procedure, reflecting the immediate objects to be served, scope of the project, source of data and results desired, and further the County must agree to provide a technical supervisor for the installation of such survey and tax system; that during the month of October, 1939, plaintiff orally proposed to the County, through its Judge and members of the Commissioners' Court, that he be engaged to cooperate with the County in obtaining financial assistance from W.P.A. and assist in the preparation of the necessary application therefor; that he also be employed by the County as its technical supervisor in the installation of said system, and furnish the necessary material; that the purpose of the County, in undertaking the enterprise of having said system installed, was to correct the insufficiency of the record system then in use by the tax officers of the County and establish a permanent record that would show the separate valuation of lands from the improvements thereon, the true record owner of the properties, proper description of same, and all holders of liens against the same, as well as an abstract of the delinquent taxes, to the end that the rendition of property and the collection of taxes would be facilitated, and to provide a complete scientific valuation, cost schedule for each type of building, scientific land valuation maps, scientific depreciation schedule, thus furnishing the tax assessor and collector of the County an accurate description of all properties, improvements and additions thereon, replacements and cost thereof, and allowances for depreciation and obsolescence; all of which was designed to save time and facilitate the assessment and collection of current and delinquent taxes.

Plaintiff alleged that, after his oral proposal to the defendant County in the month of October, 1939, he had a series of conferences with the County Judge and members of the Commissioners' Court of the County, ascertaining their objectives and, at the same time, attempted to correlate such objectives with the requirements of the W.P.A. for financial assistance; that such conferences continued until April 11, 1940, when he was expressly requested orally by the County Judge and members of the Commissioners' Court to proceed with such survey as was necessary to obtain data and information prerequisite to an application to W.P.A., for financial assistance; that in accordance with said oral request, plaintiff began immediately to ob-

tain the necessary information, it being also understood that he would assist in preparing the application; and that, if funds were allocated by W.P.A. for such enterprise, plaintiff would be employed by the County as technical supervisor for such project. Plaintiff alleged that he immediately began the work, expended much time and several thousand dollars in ascertaining the necessary data, held a number of conferences in regard to the matter with the County Judge and members of the Commissioners' Court during May, June, September and October, 1940; by which time, he had completed enough of the work to give defendant County a fairly accurate estimate of the cost of making the survey and the installation of said record tax system; that upon submission of such facts to the defendant County, the Commissioners' Court, at a regular session held on December 11, 1940, unanimously adopted an order, directing the County Judge and County Auditor to have prepared a formal request to the Works Progress Administration, and execute their Project Proposal, Form 301, calling for a complete tax survey and installation of a Standardized Assessment and Delinquent Tax System of all rural and urban real property and improvements in Dallas County.

Pursuant to said order, Project Proposal, Form 301, directed to W.P.A., was duly executed by defendant County, through its County Judge, County Auditor and County Assessor and Collector of Taxes, on December 31, 1940, requesting the W.P.A. to grant $267,596 for such project, and agreeing, as sponsor, to defray the expenses of such project to the extent of $67,500, reciting among other things that: "The County supervision will be by Mr. H. E. Aldrich, Owner, The Tax Record Company of Dallas and Fort Worth, Texas"; and also, "It is further understood that the project will not be placed in operation unless and until assurance is given that the sponsor's (Dallas County) pledge will be made available as specified in the proposal and as required by project operations."

Plaintiff alleged that the application as thus executed was presented to the W.P.A. on January 11, 1941, and was approved by the President of the United States on February 19, 1941, who allocated $267,569 to the County, designating the project as immediately eligible for operation at the discretion of the State Works Projects Administration. Whereupon, the Commis-

sioners' Court of the County, on April 3, 1941, adopted a resolution accepting the grant conditionally, in the following language; after certain whereases, the order reads: "Now, therefore, it is ordered by the Commissioners' Court of Dallas County that the offer of the Federal Government, through its Works Projects Administration, to participate in the cost of a tax survey to the extent of $267,569.00, be, and the same shall be accepted, provided, however, the details and arrangements for the carrying into effect of said project under the direct supervision and control of the Tax Assessor and Collector of Dallas County are approved and agreed to by the Tax Assessor and Collector, and provided further, that the County Auditor of Dallas County shall recommend and approve of the details and arrangements for the financing of the County's portion of the expenses of said project, and provided the legality of the expenditure of public funds for said project shall be approved by the Civil District Attorney of Dallas County, and provided further, that when the details for the carrying into effect of such project and the financing of same shall have been worked out and agreed to by the aforesaid officials of Dallas County, that same be further approved by the Comptroller and the Attorney General of the State of Texas." In the absence of allegations to that effect, it must be assumed that neither the Comptroller of the State nor the Attorney General had approved the project, nor that the County Auditor certified there existed ample budget provisions for the payment of either the amount the County was to contribute to the consummation of the project, or the amount, if any, the County would be due and owing plaintiff for services rendered, or to be rendered, under the verbal arrangement alleged, or that funds existed at that time, or would be on hand, to pay the alleged obligations of the County when due.

Plaintiff alleged that on April 15, 1941, the defendant County abandoned the project and notified the W.P.A. that it did not intend to go through with it; breached its contract with plaintiff and refused to pay the reasonable value of his services rendered in assembling data and assisting in the preparation of the application made to W.P.A., which he alleged to be $8,376.73; that, at such time and now, plaintiff was and is ready, able and willing to proceed under his contract with the defendant

564

County to act as technical supervisor of the project; that W.P.A. then and now was and is ready, able and willing to provide its agreed share of the cost of the project and that, if the defendant County had not abandoned same, plaintiff would have been entitled, on its completion, to the additional sum of $8,376.73, being the reasonable value of his services as technician, or a total of $16,753.45, for which amount he sought judgment, with 6% interest thereon. Plaintiff's petition is a declaration upon an express contract, and, in the alternative, upon an implied contract.

The above rather lengthy statement made from plaintiff's petition and exhibit, attached and made a part thereof, reveals the nature and scope of the project contemplated by Dallas County, in relation to and in furtherance of which plaintiff and the County officials had their negotiations that resulted in the alleged verbal arrangement, for the breach of which plaintiff sued.

The defendant County excepted to the sufficiency of plaintiff's petition, (1) because the project undertaken, in relation to which plaintiff contracted, was void and unenforceable, in that, it was ultra vires the power of the Commissioners' Court, being an undertaking by the County, to usurp, through its own instrumentalities, the functions of the duly elected Assessor and Collector of Taxes for the County; (2) because the alleged project and plaintiff's contract with reference thereto, being in relation to and connected with the collection of both current and delinquent taxes, was not approved by either the Comptroller or the Attorney General of the State; (3) because it appears affirmatively that the contract sued upon was verbal, entered into between plaintiff and members of the Commissioners' Court, acting as individuals, and not as a Court, and that no resolution was ever adopted by the Commissioners' Court, employing plaintiff to render the services alleged; and (4) because it was not shown that the County Auditor of Dallas County certified that ample budget provisions had been made for said project, or for plaintiff's alleged contract, and that funds were, or would be, on hand to pay said obligations when due. These exceptions were sustained and plaintiff declining to amend, his suit was dismissed, from which he appealed.

The several assignments of error and propositions urged by plaintiff simply challenge the correctness of the action of the court in sustaining the exceptions and dismissing the suit. As the application by the County to the W.P.A. for the allocation of funds was tentative in nature, and as the offer of W.P.A. to participate in the cost of the project was conditionally accepted by the County, and the conditions not having been met, the County was under no obligation—in fact, was not authorized —to proceed, but, with impunity, could abandon same as was done, and this, without reference to any other question involved. This, in our opinion, is a complete answer to plaintiff's contention that, because of the abandonment of the project by the County, he was deprived of the reasonable value of services as technical supervisor, which he could have earned but for the abandonment of the project by the County. However, whether or not plaintiff alleged a valid and enforceable contract with the County for the performance of certain preliminary services necessary and incident to the assembling of data for, and the preparation of the application to W.P.A., is the real question for our consideration. We think it obvious from plaintiff's allegations that his main purpose was to have the tax record system, known as a Standardized Assessment and Delinquent Tax System of rural and urban real properties and improvements thereon, evolved by him, installed by the County for use by its taxing authorities. The scheme contemplated the valuation of all taxable property of the County for assessment purposes, as well as the preparation of delinquent tax rolls and records. If executed, the project, in our opinion, necessarily would have usurped powers and functions of the Assessor and Collector of Taxes of the County, and superseded duties devolved by law upon said officer. In so far as it contemplated the discovery and placing on the tax rolls property theretofore escaping taxation, and the preparation of delinquent tax rolls and records, the project necessarily was in connection with the collection of delinquent taxes, within the contemplation of Articles 7264a and 7335a, Vernon's Ann.Civ.St., hence approval by the Comptroller and Attorney General of the State was a prerequisite to its validity, and, in so far as the project required the ascertainment of owners of property, and a land and building valuation survey of the entire county, its validity depended upon its being approved by the Comptroller (See statutes cited above).

We fail to find any material difference between the contract under consideration and the one involved in Marquart v. Harris County, Tex.Civ.App., 117 S.W.2d 494, 501, appeal for writ dismissed, pronounced void by the Galveston Court in an opinion by Judge Graves. The Court held that the contract was one "in connection with the collection of delinquent taxes," therefore, should have been approved by the Comptroller and Attorney General; and, as it contemplated a search for and identification of owners of property and a land and building survey of the entire county, should have been approved by the Comptroller (citing the above-mentioned statute). In the course of the discussion, the court said: " * * * it may be, as much testimony in the statement of facts indicates, that in this instance the commissioners' court concluded that the tax assessor-collector's office had broken down, and that its [the court] so occupying his place and performing his functions instead, justified an original assumption of such power upon its part; but it is not this court's understanding that our statutes in such cases conferred upon it [the commissioners' court] any such authority; on the contrary, it would seem to have been the tax assessor-collector's legal right to independently perform the duties actually conferred upon him by law. Terrell v. Greene, 88 Tex. 539, 31 S.W. 631, 634; 34 Tex.Jur. p. 444." Also, after citing Articles 7206, 7211 and 7212, relating to the duties of the commissioners' court as a Board of Equalization, the court said: "Under them it would seem never to have been contemplated that the Board of Equalization should act upon anything other than the assessments first rendered to them by the tax assessor-collector, and not initially upon their own motion. County of Galveston v. Galveston Gas Co., 72 Tex. 509, 10 S.W. 583."

■■ The doctrine applied in the mentioned case is stated in 34 Tex.Jur., Sec. 69, p. 446, as follows: "Commissioners' courts and the governing bodies of cities are bound by these rules. The commissioners' court cannot deprive an officer of the authority, rights and duties which inhere in his office, nor require him to delegate the same to another person selected by it; nor can it displace an officer by authorizing another person to perform duties devolved upon him by the statute." Also see White v. McGill, 131 Tex. 231, 114 S.W.2d 860, and Mills-Dewitt Co. v. Brazoria County, Tex.Civ.App., 142 S.W.2d 916, writ refused, where similar projects were held void. If it can be said that the project in question contained valid provisions, yet, the same being so inseparately connected with others obviously void, the entire scheme must fail. See Sylvan Sanders Co. v. Scurry County, Tex.Civ.App., 77 S.W.2d 709, and authorities there cited.

■ The project being clearly ultra vires, no recovery could be had thereon on the theory either of an express or an implied contract. Although it has been held that, where a county receives benefits under a contract it had the power to make, yet was illegally entered into, recovery may be had thereon under an implied contract or quantum meruit. See 11 Tex.Jur., p. 638, Sec. 99; Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841; City of Houston v. Finn, Tex.Sup., 161 S. W.2d 776. However, as stated in 11 Tex. Jur., p. 639, Sec. 99, "The county may not be held liable upon an implied contract or quantum meruit unless the commissioners' court was authorized to make the contract sought to be implied; * * *". Supporting the doctrine just announced, see Baldwin v. Travis County, 40 Tex.Civ. App. 149, 88 S.W. 480, writ refused; Seward v. Falls County, Tex.Civ.App., 246 S.W. 728; Goss v. Fannin County, Tex.Civ.App., 244 S.W. 204; Nunn-Warren Pub. Co. v. Hutchinson County, Tex.Civ.App., 45 S.W. 2d 651, writ refused. In Seward v. Falls County, supra, the suit was for recovery of the reasonable value of services performed preliminary and necessary to the main project, as in the instant case.

Plaintiff insists that, although the contract of employment was verbally entered into with members of the Commissioners' Court, yet was later ratified and confirmed by orders of the Commissioners' Court, duly and regularly adopted. We do not deem it necessary to decide this question, because, even if the contract of employment was ratified and confirmed by the court, being ultra vires, it cannot escape the ban of invalidity.

■ However, if it be conceded that the contract of employment was regular, within the powers of the Commissioners' Court, and that plaintiff performed services as alleged, yet a sine qua non to its effectiveness, binding quality and enforceability was lacking, in that the County Auditor had not issued a certificate in connection with said project, stating that ample budget provisions had previously been made

and that funds were on hand, or would be, to pay, when due, all obligations incurred thereunder, as required by Art. 1666, amended in 1939, see Vernon's Ann. Civ.St. Art. 1666 note.

For reasons stated, we think the judgment below was correct, therefore is affirmed.