PRITCHARD & ABBOTT et al., Appellants,

v.

Patrick H. McKENNA et al., Appellees.

No. 13614.

Court of Civil Appeals of Texas.

Houston.

Jan. 5, 1961.

Rehearing Denied Feb. 9, 1961.

Fulbright, Crooker, Freeman, Bates &, Jaworski, Leon Jaworski, B. J. Bradshaw, Houston, E. G. Aycock, Fort Worth, for appellant Pritchard & Abbott.

Markwell, Stubbs, Decker & Dalehite, William D. Decker, Galveston, for appellants Galveston County and others.

Tramonte & Urbani, D. S. Tramonte, Jr., Galveston, Leo Brewer, San Antonio, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, Patrick H. McKenna, and others, residents and taxpayers of Galveston County, Texas, for themselves and other taxpaying citizens of said county, against Galveston County, the County Judge and Commissioners of that County, the County Tax Assessor and Collector, hereinafter called assessor, the Clerk of the County Court, and Edward S. Pritchard and John L. Abbott, comprising the partnership of Pritchard & Abbott, for a temporary injunction restraining appellants from operating under or pursuant to a contract between the County of Galveston and Pritchard & Abbott dated February 2, 1959, and prohibiting the County from making any additional payments to the firm of Pritchard & Abbott. They prayed that on final hearing said contract be declared null and void and the temporary injunction be made permanent. Pritchard & Abbott filed a cross-action for damages against appellees and the sureties on their bond, alleging they wrongfully procured the issuance of the temporary injunction which was granted and later made permanent. They also filed a cross-action against Galveston County and its Commissioners Court to recover in quantum meruit in the event the contract should be held illegal and void.

The case was tried on the merits before the court without a jury. The court entered judgment in favor of appellees, decreeing said contract null and void and that the County was not liable or authorized to, pay appellants, Pritchard & Abbott, any

compensation whether under the theory of implied contract, quantum meruit or otherwise, for any services or materials furnished under such contract, and that Pritchard & Abbott take nothing on said cross-actions.

By their first two points, Pritchard & Abbott assert in essence that the trial court erred in holding the contract null and void, in restraining them from completing the part of the work which remained to be done at the time the suit was filed, and in not allowing them the agreed compensation upon completion of the work, contending that all of the work they had done or that they would have done had they been permitted to proceed, was work which the Commissioners Court could legally and validly employ them to do without obtaining approval of any State official. Practically the same contentions are advanced by Galveston County and the other appellants in their separate brief with respect to the claim of Pritchard & Abbott on the contract. By trial amendment they alleged, however, that in the event the contract be held void ab initio, Pritchard & Abbott take nothing.

The contract in question was entered into pursuant to a resolution of even date therewith duly adopted by the Commissioners Court of Galveston County. A copy of the contract is appended hereto as Exhibit A. We are called upon to determine whether the trial court erred in holding such contract null and void, and if so, whether there can be any recovery in quantum meruit.

■ Appellants do not assert, and we do not find, that the meaning of the contract is not plain. Its language is not fairly susceptible to more than one interpretation. Therefore, its general purpose and the true intention of the parties must be arrived at from a consideration of the contract as a whole and not from the acts of the parties. Lone Star Gas Co. v. X-Ray Gas Co., 1942, 139 Tex. 546, 164 S.W.2d 504. Nevertheless, we shall discuss some of the evidence with respect to what was done under the contract, not because the contract is ambiguous, but because such evidence shows a practical construction thereof, which should be given strong weight by the court in construing it. Texas & N. O. R. Co. v. Orange County, Tex. Civ.App., 206 S.W. 539, writ ref.; Gulf Coast Water Co. v. Hamman Exploration Co., Tex.Civ.App., 160 S.W.2d 92, writ ref.; City of Athens v. Andrews, Tex.Civ. App., 231 S.W.2d 928, writ ref.

The evidence shows and the trial court found that by the contract in question Galveston County undertook to employ Pritchard & Abbott to do certain work and furnish certain materials to the County, requiring them, among other things, to calculate assessed values of all properties in Galveston County, Texas, it being distinctly understood by and between said parties that the appraisals and valuations as called for in the contract include the appraisals and valuations on all property in Galveston County, real, personal, mixed, tangibles and intangibles, as of January 1, 1959. The court also found that by such contract the Commissioners Court employed said firm to do the work of providing a system for the tax assessor of said County "in order to eliminate the numerous errors that now appear on the tax rolls each recurring year" as defined by Article 7264a, Vernon's Annotated Civil Statutes; that said contract was made or entered into by the Commissioners Court in connection with the collection of delinquent taxes as defined in Article 7335a, V.A.T.S.; that the State Comptroller of Texas did not execute or join in said contract, and the same was not approved by the State Comptroller or by the Attorney General of the State; and that the valuations of all items of taxable property in Galveston County for the purpose of taxation for the year 1959 were originally or in the first instance made by said Pritchard & Abbott.

We think the procedure generally followed in the performance of the contract is well summarized in the following findings

of the court which are supported by evidence:

"8. During the period of time for taxpayers of Galveston County to file inventories and assess their property for taxation for the year 1959, the regular and customary procedure prescribed and followed by the office of the county assessor of taxes was as follows: Upon the taxpayer calling at the office of said assessor, the taxpayer was shown a form of rendition sheet upon which had been printed by the addressograph process the valuation of properties as valued for 1958 taxes, but a blue line had been drawn through such printed figures and immediately above said line there had been handwritten in blue the valuation which had been made for each item of property by said Pritchard & Abbott for 1959. If the taxpayer did not object to said valuations as so made by Pritchard & Abbott, the taxpayer signed and filed said rendition sheet with the assessor's office. If the taxpayer objected to said valuation as so made by Pritchard & Abbott for 1959, the taxpayer was instructed by the said assessor or his deputies or employees to go to said Pritchard & Abbott's office and employees and to negotiate with said Pritchard & Abbott in regard to the valuations so objected to. In many instances, Pritchard & Abbott, at the request of the taxpayer, made a further investigation as to the values of items of property. All of said negotiations between taxpayers and Pritchard & Abbott were for the purpose of trying to reach an agreement as to such valuations. If an agreement was reached by the taxpayer and Pritchard & Abbott for a value different from the one theretofore so made by Pritchard & Abbott, said value was crossed out and the new agreed value was written on the rendition sheet by Pritchard & Abbott. In those cases where an agreement was reached between the taxpayer and Pritchard & Abbott, the taxpayer signed the rendition sheet containing the agreed valuations and filed said rendition sheet with the office of the assessor or left it with Pritchard & Abbott to be filed with the office of the assessor. In those cases where no agreement was reached between the taxpayer and Pritchard & Abbott, the word 'Protested' would customarily be written on the valuation sheet, which would then be filed by the taxpayer, either directly or through Pritchard & Abbott, with the office of the assessor.

"9. Before any taxpayers of Galveston County filed inventories or rendered their property for taxation for the year 1959, defendant J. H. Oberndorfer, Assessor and Collector of Taxes for Galveston County, caused a rubber stamp to be made reading as follows: 'This value was set by Pritchard & Abbott by order of the Commissioners Court.' Said words 'This value was set by Pritchard & Abbott by order of the Commissioners Court' were stamped on every inventory and assessment sheet covering every rendition and assessment of property for taxation by Galveston County in the year 1959, and said words were stamped on all of said sheets before they were shown to the taxpayers in the first instance, all of which was done by and pursuant to the express orders and instructions of said J. H. Oberndorfer as such Assessor and Collector of Taxes."

There is also evidence that in accepting the proposal of Pritchard & Abbott, the Commissioners Court was acting on the recommendation of the assessor; that all inventory sheets for the year 1959 were prepared by the assessor on the addressograph machine in his office during October and November of 1958 and contained the same printed figures that were on the 1958 inventory sheets; that Pritchard & Abbott did not appraise or list any item of property which did not appear on the inven-

tory sheets supplied by the tax assessor and did not collect any delinquent taxes.

The trial court made the following additional findings of fact which find support in the evidence: That on numerous occasions the individual property owners went to the tax assessor-collector to complain about the values fixed by Pritchard & Abbott; that the assessor would tell them that "his hands were tied," that he could do nothing about the values fixed by Pritchard & Abbott except to refer the matter to them for a reappraisal or to the Board of Equalization, and that the whole revaluation program was put on by the Commissioners Court, and he had nothing to do with it, and that the property owners should go and see the Commissioners; that Pritchard & Abbott prepared the list of taxpayers to appear before the Board of Equalization for 1959; that neither the tax assessor nor anyone from his office testified before the Board of Equalization, but that representatives of Pritchard & Abbott regularly appeared for the year 1959 and testified before the Board; that the Board of Equalization organized in May of 1959 had its first business on August 4, 1959 and continued in session until the latter part of August, 1959, during which time it heard all property owners who desired to appear before it; that special skill, scientific knowledge and equipment were required to appraise industries such as oil refineries, chemical plants and utilities, but the assessor testified he could appraise a great majority of the property in Galveston County such as vacant lots and residences; and that all services provided for in said contract and all materials to be supplied by Pritchard & Abbott thereunder, had been furnished by them, except only the transcription of the final appraised value figures from the field record cards employed in making appraisals under the contract to the permanent record cards to be filed in the office of the assessor.

Appellants take the position that under Article 8, Sec. 1 of the State Constitution, Vernon's Ann.St., requiring that taxes be equal and uniform, and Article 7212, V.A. T.S., providing that boards of equalization shall have power and it is made their duty to supervise the assessment in their respective counties, the Commissioners Court of Galveston County not only had the power but the duty to employ Pritchard & Abbott in order to achieve "fair, impartial and equal taxation of all classes of property subject to taxation in Galveston County," as provided in the order of the Commissioners Court in approving said contract. Article 7212 gives the boards of equalization the power and makes it their duty to supervise the assessment of their respective counties, and if satisfied that the valuation of any property is not in accordance with the laws of the state, to increase or diminish the same and to affix the proper valuation thereto, as provided for in Article 7211. This latter Article places squarely on the tax assessor the duty of accepting the property owner's rendition and if satisfied therewith of so listing the property, but if not satisfied, of placing his value thereon opposite each piece of property rendered. If the property owner is not satisfied with the assessor's value, he shall so notify the assessor and if desiring so to do, make oath before the assessor that the valuation so fixed by said officer on said property is excessive; such officer to furnish such rendition, together with his valuation thereon and the oath of the property owner, if such oath has been made, to the Commissioners Court, which Court shall hear evidence and determine the true value of such property as of January 1 of the year for which the assessment is made.

Article 7212 continues:

"* * * and when any Assessor in this State shall have furnished said Court with the rendition as provided for in the preceding Article, it shall be the duty of such Court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, who shall testify under oath the character, quality, and quantity of

such property, as well as the value thereof."

After this is done, the court fixes the value of such property in accordance with the evidence so introduced and as provided for in Article 7211, and its action is final.

■■ We are of the opinion that Article 7212 in giving boards of equalization the power and in making it their duty to supervise the assessment of their respective counties, clearly refers to the supervision of assessments made in the first instance by the officer legally charged with the duty of making such assessments. Surely, the commissioners sitting as a board of equalization would not supervise assessments they themselves had already made. There is nothing in such Article conferring upon the Commissioners Court the power and duty of appraising property or having it appraised prior to the time it is convened as a board of equalization. Acting as a board it supervises, approves or disapproves, increases or diminishes assessments, equalizes taxes and exercises the powers and performs the duties given and imposed upon it by the State Constitution and Statutes, from which commissioners courts and boards of equalization derive such powers as they have. But it was never contemplated, under Articles 7211 and 7212 or 7206 hereinafter discussed, that the board of equalization should act upon anything other than assessments first rendered to them by the tax assessor. Marquart v. Harris County, Tex.Civ.App., 117 S.W.2d 494, writ dism.; Galveston County v. Galveston Gas Co., 72 Tex. 509, 10 S.W. 583. This is not to say that boards of equalization do not have the power to equalize assessments in all cases regardless of whether the assessor or any one else has made complaint, if not satisfied with the assessment made. Brundrett v. Lucas, Tex. Civ.App., 194 S.W. 613, writ ref.

Appellants stress that Article 7212 was amended in 1941 by adding at the end of the Article the following proviso:

" * * * provided however, that if the Commissioners Court of any county who contracts with or employs any individual, firm, or corporation to compile taxation data, the compensation of such individual, firm, or corporation may be paid on a pro rata basis from each county fund receiving any taxes derived from such valuation."

■ It is our view that this proviso was not intended to give the Commissioners Court by implication any new or additional power or authority to contract. It was intended merely to provide a pro rata basis for payment of persons contracted with or employed, as is clearly shown by the emergency clause in connection with the amendment, reading: " * * * in order to better control expenditures of county funds * * *" H. B. No. 633, 47th Regular Session.

Section 14, Article 8, of the State Constitution, provides that the assessor and collector of taxes shall perform all duties with respect to assessing property for the purpose of taxation and of collecting taxes, as may be prescribed by the Legislature. Article 7189 provides that assessors shall, between the first day of January and the 30th day of April of each year, proceed to make a list of taxable property, real and personal, in his county and assess the value thereof. Article 7196 requires the assessor to fill in the blank spaces in record books furnished to him, while Article 7197 requires the assessor to make an abstract of all city, town or village blocks or subdivisions. Article 7205 requires the assessor to list and assess all taxable property which has not been listed to him, and provides in detail how he shall do so. Penalties are imposed upon the assessor if he fails to perform the duties required of him, and he is required to take an oath that he will perform every duty required of him as tax assessor by the Constitution and the laws of this State.

The evidence shows that under the contract in question instead of the assessor placing his value on property on the rendition sheets as required by Article 7211, Pritchard & Abbott took the 1958 inven-

tory forms. furnished them, and put their own values on such property. If the taxpayer objected to such values he was instructed to go to Pritchard & Abbott's office and negotiate with that firm in regard thereto. If the taxpayer and Pritchard & Abbott reached an agreement as to the valuation, the value originally placed by Pritchard & Abbott was crossed out and the new agreed value was written on the rendition sheet by Pritchard & Abbott.

It is true that boards of equalization, under Article 7206, V.A.T.S., when convened and so acting, have the power to receive assessment lists or books of assessors "for inspection, correction or equalization and approval," and to "send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on same" and correct errors in assessments. Moreover, it has been held that the Commissioners Court has the implied authority, although it has no express authority, to employ skilled persons to appraise the value of oil and gas properties prior to the time it convenes as a board of equalization. Roper v. Hall, Tex.Civ. App., 280 S.W. 289; Federal Royalty Company v. State, Tex.Civ.App., 42 S.W.2d 670. The contracts in those cases, however, were restricted to the narrow and special field, where the services required technical equipment and special skill and experience not possessed by the ordinary person. The courts in those cases in effect conceded that the tax assessor must discharge such duties of his office "as may be expected from a man of ordinary experience and capacity." [280 S.W. 291.] It is obvious also that the Supreme Court in Whelan v. State, 1955, 155 Tex. 14, 282 S.W.2d 378, 381, in which it is stated: "The enlistment of expert assistants in such matters is not to to be condemned," refers to employment by the Commissioners Court of Harrison County of experts to assist in arriving at the value of producing oil and gas properties. It is our view that the doctrine of implied authority should not be extended beyond the type of cases in which it was applied from sheer necessity.

■ In the instant case, the contract requires Pritchard & Abbott not only to procure and complete a record of all oil and/or gas producing properties and pipe lines, and appraise and make valuations of such properties, but also to calculate assessed values of all properties in Galveston County with the distinct understanding that the appraisals and valuations called for in the contract include appraisals and valuations of all property, real, personal, mixed, tangibles and intangibles, as of January 1, 1959. Said contract embraces the valuation of the entire taxable property in Galveston County, although the evidence shows that the assessor possesses the experience and capacity to appraise lots and acreage and the improvements thereon and indeed the major portion of the taxable property in the County. The contract, therefore, calls for and results in the usurpation of the powers, duties and functions of the tax assessor by the Commissioners Court and Pritchard & Abbott and obligates the County to expend public funds for services which the assessor is capable of performing and by law required to perform.

We think the contract would be invalid and in excess of the powers of the Commissioners Court even if construed as being limited in its terms to the acts and services actually performed and rendered by Pritchard & Abbott as shown by the evidence and findings of the court hereinabove set out. Pritchard & Abbott undertook in performance of the contract to appraise all property of every kind and description listed on the tax rolls of the county. Their appraisals were by no means limited to oil, gas and other properties requiring special technical skill to appraise the same. They held conferences with taxpayers prior to the time the Board of Equalization convened, adjusted appraisals, increased or diminished values of all kinds of property, agreed with taxpayers as to values and

changed values to conform with agreements reached by them and taxpayers. They thus performed services and exercised powers imposed upon the tax assessor and for which he received his compensation under the Constitution and statutes of this State, thereby actually usurping the functions, duties and prerogatives of such officer.

■ The law is well settled that the Commissioners Court does not have the power to usurp the authority, functions and duties of the tax assessor or employ other persons to perform duties which are by law imposed upon such officer. 34 Tex.Jur., par. 69, pp. 444, 446; Marquart v. Harris County, supra, and authorities cited. See also Aldrich v. Dallas County, Tex.Civ.App., 167 S.W.2d 560, 564, error dism., in which the court denied recovery on several grounds, one of them being that the project " * * * would have usurped powers and functions of the Assessor and Collector of Taxes of the County, and superseded duties devolved by law upon said officer."

The cases of Stevens v. City of El Paso, Tex.Civ.App., 81 S.W.2d 149, error dism.; Simkins v. City of Corsicana, Tex.Civ.App., 86 S.W.2d 792; Whitney v. City of Terrell, Tex.Civ.App., 278 S.W.2d 908, relied upon by appellants, involving contracts for the valuation of property made by cities and not by the county, and also the case of Crosby v. P. L. Marquess & Co., Tex.Civ.App., 226 S.W.2d 461, involving a contract made by a school district, are not controlling as the contracts in such cases were not governed by the Constitution and Statutes covering the powers and duties of the Commissioner's Court and county tax assessor.

■ We have concluded, as did the trial court, that in executing the contract in question the Commissioners Court and Pritchard & Abbott under said contract took over certain duties, rights and powers of the tax assessor of Galveston County without statutory authority. The fact that such usurpation may have been with the knowledge and consent, or even at the suggestion, of the tax assessor is immaterial. Since the contract is indivisible, if any part of it is unauthorized or invalid, the entire contract must fall. Hence the court properly held such contract ultra vires the powers of the Commissioners Court and invalid. Sylvan Sanders Co. v. Scurry County, Tex.Civ.App., 77 S.W.2d 709, error ref.; Aldrich v. Dallas County, supra; Midland County v. Slaughter, 61 Tex.Civ.App. 328, 130 S.W. 612, error ref.

■ The trial court found that by the terms, meaning and effect of the contract in question, the Commissioners Court did thereby employ Pritchard & Abbott to do the work of providing and "to provide a system for" the tax assessor of said County "in order to eliminate the numerous errors that now appear on the tax rolls each recurring year", as defined by Article 7264a, V.A.T.S. This finding is supported by testimony of the Chief Deputy Assessor and Collector of Taxes for Galveston County, who testified that he expected to have for the assessor, soon, a new system represented by the record card system, as specified in the Pritchard & Abbott contract; that such system would be very valuable to him, and would eliminate a lot of errors.

Article 7264a provides, among other things:

"Sec. 1. It is hereby declared the Policy of the State to adjust delinquent taxes, correct errors, to eliminate conflicts in surveys of land, and to collect the delinquent, occupation, franchise and ad valorem taxes, in order to clear this State of such taxes, errors, and conflicts at the earliest date possible, and to provide a system for assessors, in order to eliminate the numerous errors that now appear on the tax rolls each recurring year."

We think the trial court properly concluded that the contract in question is within the purview of Article 7264a, and, therefore, unauthorized and void because not made by, joined in or approved by the State

Comptroller of the State of Texas as required by such article.

It is appellants' contention that the contract in question does not provide for the kind of "tax or plat system" referred to in Section 2 of said article. The contract provides that Pritchard & Abbott are to analyze and review the permanent record card system previously compiled by them (not completed or delivered to the assessor), so as to bring appraisals thereon to current condition as of January 1, 1959, adding all new properties necessitated by construction and changes in ownership, and supplying the County permanent record cards for each lot or tract of land, showing its description and location, together with a diagram of all improvements located on each lot or tract of land showing the square or cubic feet in each building, the cost per square or cubic foot to reproduce such buildings, the depreciated value and obsolescent features, the dimensions of the tract, the unit front foot price on lots and acreage and values on tracts of all real property in Galveston County. The completed cards were to be filed in the assessor's office in special cabinets furnished by Pritchard & Abbott.

We are of the opinion that the contract calls for the installation of a tax or plat system within the meaning of Article 7264a, and one entirely different from any system previously employed by the assessor. We can perceive of no purpose in contracting for such a system unless it was to eliminate numerous errors appearing upon the tax rolls, regardless of the nature of such errors, and also to furnish a new tax or plat system containing accurate descriptions, diagrams and specifications of lots and tracts of land and the improvements thereon.

■ We agree with appellants that the contract in question was not entered into in connection with the collection of delinquent taxes. Therefore, it did not require the approval of the State Comptroller and Attorney General of the State of Texas, as provided in Article 7335a, V.A.T.S. It is true that if Pritchard & Abbott appraised all the property in Galveston County as of January 1, 1959, as required by their contract; the assessor would doubtless be informed thereby of property not previously on the tax rolls, and thus be in a better position with such knowledge to back assess such property, as provided in Article 7346, V.A.T.S. We are of the opinion, however, that the connection, if any, between the appraisal of all property in the county and the collection of delinquent taxes, is too remote to bring it within contemplation of the contract or within the purview of said article, or the holdings of Marquart v. Harris County, supra, and White v. McGill, 131 Tex. 231, 114 S.W.2d 860, with respect to the collection of delinquent taxes.

Appellants by Point 3 assert that the trial court erred in holding that Pritchard & Abbott as a matter of law could not recover for the value of services performed and materials supplied by them on the basis of quantum meruit or implied contract.

■ The law is well settled that where services are performed and materials furnished to a county under an invalid contract made by the Commissioners Court, there can be no recovery in quantum meruit or implied contract if the Commissioners Court did not have the power and authority to make such contract. See 14 Amer.Jur., p. 212, Counties, § 44, where it is stated:

"On the other hand, it is established by the weight of authority that a county cannot be held liable to pay for the benefits received under an express contract which was beyond the power of the county to make; a county cannot bind itself impliedly where it cannot bind itself expressly. Thus, the doctrine of implied liability cannot be invoked to render a county liable for the value of services performed in its behalf under a contract that was ultra vires from the standpoint of the county."

The rule is also stated in 11–B Tex.Jur. 209:

"The county may not be held liable upon an implied contract or quantum meruit unless the commissioners' court was authorized to make the contract sought to be implied; nor is the county estopped to set up as a defense the want of authority in making the contract * * * A county cannot be bound by an agreement made in violation of a statute enacted for the purpose of regulating the manner of making contracts."

In Baldwin v. Travis County, 40 Tex.Civ. App. 149, 88 S.W. 480, 484, error denied, Baldwin sued on contract and also in quantum meruit for the reasonable value of services rendered by him and accepted by the Commissioners Court. The court said:

"And a county cannot be held liable in an action upon an implied contract or quantum meruit, unless the commissioners' court was authorized to make the contract sought to be implied, or on which the quantum meruit is based. City of San Antonio v. French, 80 Tex. [575] 578, 16 S.W. 440, 26 Am.St.Rep. 763; Penn v. City of Laredo (Tex.Civ. App.) 26 S.W. 636; Peck v. City of Hempstead, [27] Tex.Civ.App. [80] 65 S.W. 653; 1 Dillon on Municipal Corporations, §§ 459, 460. There being no liability upon a contract not within the scope of the authority of the commissioners' court, the county cannot be estopped from setting up the question of authority to make such contract as a defense to an action upon same. 2 Dillon on Municipal Corporations, 935, 936."

See also Nunn-Warren Publishing Co. v. Hutchinson County, Tex.Civ.App., 45 S.W. 2d 651, error ref.; Noel v. City of San Antonio, 11 Tex.Civ.App. 580, 33 S.W. 263, error ref.; and Flatonia Independent School Dist. v. Broesche, Tex.Civ.App., 176 S.W.2d 223, ref., w. o. m.

In the last mentioned case Broesche conceded that he could not recover on the ex-

press contract he had made because the statutes did not authorize the school district to make such contract until after bonds had been voted, but he contended that he should recover on the theory of quantum meruit or implied contract. The court held against such contention on the ground that the school district did not have the authority or power to make such contract.

In Aldrich v. Dallas County, Tex.Civ. App., 167 S.W.2d 560, 565, error dism., the court said with respect to whether Aldrich could recover from Dallas County upon quantum meruit the reasonable value of benefits received by the county from Aldrich under an invalid contract:

"The project being clearly ultra vires, no recovery could be had thereon on the theory either of an express or an implied contract. Although it has been held that, where a county receives benefits under a contract it had the power to make, yet was illegally entered into, recovery may be had thereon under an implied contract or quantum meruit. See 11 Tex.Jur., p. 638, Sec. 99; Sluder v. City of San Antonio, Tex.Com.App., 2 S.W.2d 841; City of Houston v. Finn, Tex.Sup., [139 Tex. 111] 161 S.W.2d 776. However, as stated in 11 Tex.Jur., p. 639, Sec. 99, 'The county may not be held liable upon an implied contract or quantum meruit unless the commissioners' court was authorized to make the contract sought to be implied; * * *' Supporting the doctrine just announced, see Baldwin v. Travis County, 40 Tex. Civ.App. 149, 88 S.W. 480, writ ref.; Seward v. Falls County, Tex.Civ.App., 246 S.W. 728; Goss v. Fannin County, Tex.Civ.App., 244 S.W. 204; Nunn-Warren Pub. Co. v. Hutchinson County, Tex.Civ.App., 45 S.W.2d 651, writ ref."

We are of the opinion that Pritchard & Abbott cannot recover in quantum meruit or implied contract in this case. The services rendered by Pritchard & Ab-

bott include some services for which the Commissioners Court probably had power to contract, but also some services for which it had no power to contract, expressly or impliedly. There are no pleadings or proof showing the value of the services for which the court had power to contract and those for which it lacked such power. The only proof offered by Pritchard & Abbott in their bill of exceptions covers all of such services lumped together and the total sum they claim to represent the reasonable value of all such services rendered by them, without any allocation of such sum to the various services.

The case of Hume v. Zuehl, Tex.Civ. App., 119 S.W.2d 905, writ ref., relied upon by appellants, Pritchard & Abbott, is not in point. There was no invalid contract in such case. All that was involved was the right of the Commissioners Court to cancel a valid contract without joinder of State officials. We shall not further lengthen this opinion by undertaking to distinguish the present case from the other cases relied upon by Pritchard & Abbott. The distinction is adequately brought out in both Aldrich v. Dallas County, supra, and Flatonia Independent School Dist. v. Broesche, supra. It is also pointed out in the A.L.R. Annotations, 110 A.L.R., p. 159, and 154 A.L.R., p. 370; and in 98 C.J.S. Work & Labor § 30c, p. 761.

We have concluded that there is no error in the case which will warrant reversal of the trial court's judgment.

Judgment affirmed.

## EXHIBIT A

The State of Texas } Know All Men By
County of Galveston } These Presents:

"That, Whereas, the County of Galveston, State of Texas, acting by and through its Commissioners' Court, has determined that there is a necessity for, and that it will be to the best interest of said County and its citizens generally, to employ experts, skilled in the appraisal and valuation of oil and/or gas producing properties, industrial properties, and lands and buildings, and to make a permanent record of all lands and buildings within the County, so that all properties may be properly valued for the purpose of taxation and values thereof equalized, and,

"Whereas, it is further determined by said County, and by the Commissioners' Court thereof, that Pritchard & Abbott, a Partnership of Fort Worth, Tarrant County, Texas, possessed the experience and the scientific and technical knowledge required for such work;

"Now, Therefore, this Contract entered into by and between Pritchard & Abbott, a Partnership, hereinafter styled First Party, and Galveston County, Texas, acting by and through its Commissioners' Court, hereinafter styled Second Party, under the following terms and conditions:

### "I.

"In consideration of the services to be rendered by First Party as hereinafter set forth, Second Party does hereby employ said First Party as its agent and representative, to do and perform the following work and render the following services, subject to all the terms and provisions hereof:

"1. Procure available information and complete a record of all oil and/or gas producing properties and pipe lines, and appraise and make valuations of such properties, as of January 1, 1959.

"2. Analyze and review the permanent record card system heretofore compiled by First Party, so as to bring appraisals thereon to current condition as of January 1, 1959, adding (due to the extraordinary growth of Galveston County during the period of operations of First Party therein) all new properties, necessitated by construction and changes in ownership as of January 1, 1959, thereby

supplying to Second Party permanent record cards for each lot or tract of land, showing its description and location, together with a diagram of all improvements located on each lot or tract of land, showing the square or cubic feet in each building, the cost per square or cubic foot to reproduce these buildings, the depreciated value, taking into consideration the age, economic, and obsolescent features. The card will show the dimensions of the tract of land, the unit front foot price on lots and acreage values on tracts of all real property located in Galveston County, Texas, a copy of such card, marked Exhibit 'A', being attached hereto and made a part hereof.

"3. Compile appraisals and valuations of Industrial Properties, Public Utilities, Refineries, Gasoline Plants, Tank Farms, Tankage, and Oil and Gas Storage facilities.

"4. Furnish the necessary equipment, agents, representatives, and employees for the performance of all such work and services, at the sole cost and expense of First Party, it being understood that Second Party shall not be held liable for their wages, salaries, acts, or conduct.

"5. Calculate assessed values of all properties in Galveston County, Texas, subject to the terms of this Contract, employing the percentage of full market value fixed by the Board of Equalization of Galveston County, Texas, as the basis for such calculations.

"6. Render assistance to the Board of Equalization of Galveston County with respect to all properties herein enumerated, so as to enable such Board to determine the full market values and if there are no market values, the intrinsic values of such properties, as of January 1, 1959, so that

the taxation thereof shall be equal and uniform, attending the meetings of such Board of Equalization regularly convened, for the year 1959. First Party agrees to supply expert testimony before the Board of Equalization of Galveston County, supporting such valuations, and will also supply expert testimony at the trial of any litigation involving the validity of valuations fixed by such Board of Equalization, pursuant to the recommendations of the personnel employed by First Party.

"7. First Party further agrees to make available to Second Party, in the period preceding the meetings of the Board of Equalization of Galveston County for the year 1959, sufficient trained and efficient personnel to conduct conferences and interviews with all property owners of Galveston County, desiring such conferences and interviews for the purpose of reviewing, analyzing and comparing with others, proposed assessed valuations of their properties for the tax year of 1959.

"8. It is distinctly understood by and between the parties to this contract that the appraisals and valuations as called for in this contract include the appraisals, valuations on all property in Galveston County real, personal, mixed, tangibles and intangibles as of January 1, 1959.

"9. It is distinctly understood by and between the parties to this contract that this contract is cumulative and supplemental to any and all other contracts heretofore entered into between the County of Galveston and Pritchard and Abbott and that the signing of this contract does not obviate the necessity of Pritchard and Abbott performing any and all other obligations on their part as were called for in the other contracts.

## "II.

"Second Party agrees and obligates itself to pay to First Party, in consideration of the work and services provided herein, as above set forth, the sum of Eighty-six Thousand Five Hundred ($86,-500.00) Dollars. Payment of said sum shall be upon the following basis:

"1. Twenty-six Thousand Five Hundred ($26,500.00) Dollars shall be paid to First Party on or before February 1, 1959, the same to be paid from current funds of the year 1958–1959.

"Second Party represents and agrees that the current funds of the County for the year 1958–1959 are sufficient for the payment to First Party therefrom of the amount due, as above provided, and that such funds are within the revenues for current purposes for such year and reasonably anticipated to be received during such year.

"2. The balance of $60,000.00 is to be due and payable as follows: On or before November 1, 1959, $20,000.-00; on or before December 1, 1959, $20,000.00; on or before January 1, 1960, $20,000.00.

## "III.

"It is distinctly understood and agreed that Second Party does not, by the terms hereof, create any debt or obligation upon the part of Galveston County, Texas, payable out of current revenues, other than the sum of Twenty-six Thousand, Five Hundred ($26,500.00) Dollars, payable hereunder, as above set forth, the payments thereof to be made out of current revenues for the year ending September 30, 1959.

"It is further distinctly understood and agreed that although Second Party is creating by the terms hereof, as to the payments to be made under the terms hereof, on or before November 1, 1959, December 1, 1959, and January 1, 1960, respectively, above set forth, a debt and obligation on the part of Galveston County, Texas, payable out of revenues for the year ending September 30, 1960, said Second Party, acting in its capacity as Commissioners' Court of Galveston County, Texas, does hereby undertake and obligate itself to levy a tax sufficient to make payment of the sum herein provided to be paid out of revenues for the tax year ending September 30, 1960, and thereby does here and now make provision for payment of the debt thus created.

## "IV.

"Although the language of this Contract might otherwise be subject to the interpretation that the same provides for the performance of services by First Party identical with those provided under the terms of the Contract entered into by and between the parties hereto in the year 1958, it is nevertheless distinctly understood and agreed that the services herein provided to be performed by First Party do not duplicate any of the services performed under said Contract of 1958, but are supplementary thereto, the services herein provided for being necessitated by changes in the valuation of various classes of property in Galveston County, occasioned by depreciation, depletion, appreciation, additions, new construction, changes in zoning, discovery of new oil producing horizons, loss by fire and storm, alterations in basic uses to which properties are put, obsolescence, changes in economic factors, and all other factors, changes in which directly affect market value, and it being necessary to maintain and correct the basic records herein provided for, on a current basis, in order that the same may furnish a reliable guide in the equalization of all classes of properties for tax purposes in Galveston County, Texas.

## "V.

"The execution of this contract is authorized by proper resolution duly adopted

by the Commissioners' Court of Galveston County, Texas, and entered upon the minutes of such Court.

"Executed In Duplicate Originals by order of the Commissioners' Court of Galveston County, Texas, on this 2nd day of February, 1959.

"Pritchard & Abbott
"By /s/ E. S. Pritchard
"First Party

"Galveston County, Texas
"By /s/ Theodore R. Robinson
"County Judge

" /s/ Irvin P. Dantin
"Commissioner, Precinct No. 1

" /s/ Jimmie Vacek
"Commissioner, Precinct No. 2
"
"Commissioner, Precinct No. 3

" /s/ Jack Lawrence
"Commissioner, Precinct No. 4

"(Seal)
"Attest:

" /s/ John R. Platte
"County Clerk
"Galveston County, Texas.
"By /s/ Gertrude McKenna,
"Deputy."

### On Motions for Rehearing

In their motion for rehearing, counsel for appellants, Pritchard & Abbott, assert that this Court, having stated that the services rendered include some services for which the Commissioners Court probably had power to contract, erred in failing to remand the case to enable them to develop in a new trial the reasonable and fair value of those services. In Chevalier v. Lane's, Inc., 147 Tex. 106, 1948, 213 S.W. 2d 530, 535, 6 A.L.R.2d 1045, the court said:

"The provision of Rule 505, Texas Rules of Civil Procedure, authorizing the Court to 'reverse the judgment and remand the case to the lower court, if it shall appear that the justice of the case demands another

trial,' obviously does not refer to a situation in which there was no error below upon which to predicate a reversal. Our law does not contemplate remands for new trial except in connection with reversals and does not permit reversals except for errors."

 Under this authority and the pertinent provisions of Rule 434, T.R.C.P., we have no authority to reverse a case and order a new trial unless the trial court has erred. There is no reversible error in the present case. See also Friddell v. Greathouse, Tex.Civ.App., 230 S.W.2d 579, error dism. We have examined the cases cited by said appellants. They are factually distinguishable and inapplicable.

Motion for rehearing of Pritchard & Abbott and also that of appellants, Galveston County et al., are overruled.

COLEMAN, J., not sitting.